IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


WILLIAM BURTON MORRISON,                §
                                        §
          Petitioner,                   §
                                        §
v.                                      §          2:11-CV-0254
                                        §
WILLIAM STEPHENS, Director,             §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                                        §
          Respondent.                   §


## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner has filed an application for a federal writ of habeas corpus challenging the revocation of his parole and the failure to credit his sentence with the amount of time he served outside of prison while on parole, commonly called "street time." For the reasons hereinafter stated, the United States Magistrate Judge is of the opinion federal habeas corpus relief should be DENIED.


I.
PROCEDURAL HISTORY

On May 29, 1980, petitioner was convicted by a jury of the felony offense of murder out of the 262nd Judicial District Court of Harris County, Texas, and was sentenced to a 30-year term of imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division. *State v. Morrison*, No. 310,634-A. The conviction was affirmed on July 15, 1982 by the Court of Appeals for the Tenth District of Texas. *Morrison v. State*, No. 10-81-093-CR. Petitioner does not challenge

the murder conviction or his 30-year sentence in this proceeding.

Petitioner's sentence begin date was April 4, 1980 and after serving almost six (6) years in custody, the Texas Board of Pardons and Paroles granted petitioner release to parole on February 11, 1986.  The Certificate of Parole set out Rules and General Conditions of Parole Release reflecting petitioner's parole was conditional and based upon the condition that he, *inter alia*, "[o]bey all municipal, county, state and federal laws" (Rule #2) and not own, possess, use, sell, or control, any firearm, prohibited weapon, or illegal weapon, or unlawfully carry any weapon, or use, attempt or threaten to use any tool, implement or object to cause or threaten to cause any bodily injury (Rule #5). The Certificate also stated:

> BE IT FURTHER KNOWN THAT ANY VIOLATION OF SUCH CONDITIONS SHALL BE SUFFICIENT CAUSE FOR REVOCATION OF THIS PAROLE, AND THAT ALL TIME SERVED ON PAROLE SHALL BE FORFEITED.

On February 18, 1986, the conditions of release were explained to petitioner, he signed an agreement to abide by the parole conditions, and he was released to parole.  At the time of his release to parole, petitioner had served 5 years, 10 months and 2 weeks of his 30-year sentence of confinement.[1]

On October 29, 2003, petitioner was arrested on a pre-revocation warrant.  On April 19, 2004, the warrant was withdrawn and petitioner was released and continued on parole.[2]

On August 22, 2009, petitioner pled *nolo contendere* to an August 21, 2009 misdemeanor offense of Assault by Threat before a Liberty County, Texas Justice of the Peace and was fined $400. On August 28, 2009, a pre-revocation warrant issued for petitioner's arrest for violations of the

---

[1]Although petitioner was released to parole, he was also eligible to be released to mandatory supervision when the time served requirements would have been met.  On September 1, 1987, Texas statutes were amended to make a prisoner serving a sentence for murder ineligible for release to mandatory supervision.  *See* Tex. Code Crim. Proc. art. 42.18 § 8(c) (1987).  Such legislation, however, applied only to inmates sentenced for an offense committed after September 1, 1987.  Consequently, petitioner remains eligible for release to mandatory supervision despite his conviction for the offense of murder.

[2]Petitioner received 174 days jail credit toward his sentence for 10-29-2003 to 4-19-2004.

conditions of his parole, to wit:  for committing the offense of Assault by Threat on August 21, 2009 (the misdemeanor to which petitioner had pled no contest), for using a weapon during the Assault by Threat offense on August 21, 2009, and for committing the offense of Aggravated Assault on August 28, 2009.  This revocation warrant was executed on August 28, 2009 and petitioner was arrested and placed in the Liberty County Jail.

On September 23, 2009, a parole revocation hearing was held.  After hearing testimony, the hearing officer found petitioner violated the conditions of his parole by violating Rule #2 requiring petitioner to obey all municipal, county, state and federal laws by committing both the offense of Assault by Threat and the offense of Aggravated Assault.  The hearing officer found petitioner did not violate Rule #5 by using a weapon during the assault by threat offense.

After the hearing officer made his violation findings, petitioner's attorney testified petitioner was a business owner in the community, that his fees were current, that his residence/marital situation was satisfactory, and that he had adjusted well, and requested the Board continue his parole, place him in an Intermediate Sanction Facility (ISF)[3] or impose electronic monitoring.  Petitioner's parole officer testified petitioner had done well under her supervision and recommended petitioner's parole not be revoked but be continued with modified conditions.  The hearing officer, however, recommended petitioner's parole be revoked.  On September 30, 2009, a reviewer agreed with the hearing officer and recommended petitioner's parole be revoked.  On October 1, 2009, the Board of Pardons and Paroles (the Board) revoked petitioner's parole.  On February 17, 2010, petitioner was returned to

---

[3]An ISF is a "fully-secured facility used for short-term incarceration of offenders who violate the conditions of their community supervision, parole, or mandatory supervision.  ISFs are utilized by . . . the Parole Division (PD) for parolees and mandatory supervision offenders." *Texas Department of Corrections*, Definitions & Acronyms.

TDCJ-CID to serve the remainder of his 30-year sentence assessed in 1980.[4]  After the revocation of

his parole and return to TDCJ-CID, petitioner lost all "street time" spent on parole, *i.e.*, 23 years and

20 days.

On March 9, 2010, petitioner filed a time credit dispute resolution form with the TDCJ

Classification and Records Division seeking the reinstatement of his "street time."  On April 21, 2010,

prior to a decision of the time dispute resolution, petitioner filed a *pro se* state application for a writ of

habeas corpus alleging TDCJ-CID erred in failing to credit his sentence with the "street time" he spent

on parole and arguing that once given flat time credit for his "street time" that his sentence had

expired on April 4, 2010.  *In re Morrison*, No. 73,988-01.  On May 10, 2010, the State filed an

answer noting Texas case law required "[a]ll persons seeking time credit relief in an application filed

pursuant to Art. 11.07, § 3, filed in the district clerk's office on or after January 1, 2000, must show

that a written administrative decision has been obtained, or that he is within 180 days of release

according to current department records, or must allege that he sought resolution of his credit

complaint more than 180 days before the applidcation was filed."  *Ex parte Stokes*, 15 S.W.3d 532,

533 (Tex.Crim.App. 2000) (*citing* Tex. Gov't Code Ann. § 501.0081 (Vernon Supp. 2002)).  The

State argued petitioner had not met any of the statutory predicates for raising a time credit complaint.

On May 11, 2010, the state trial court entered findings of fact and conclusions of law recommending

petitioner be denied state habeas relief.  On May 26, 2010, the Texas Court of Criminal Appeals

dismissed petitioner's habeas application without written order citing Texas Government Code §

501.0081(b)-(c) (statutes requiring inmates to first seek relief through the prison's time dispute

resolution process before pursuing a state application for habeas corpus).

---

[4]Petitioner received 35 days jail credit toward his sentence for 8-29-2009 to 10-1-2009, and his flat time sentence calculation began again on 10-2-2009.

On July 26, 2010, petitioner filed a second state habeas application challenging his 2009

parole revocation and TDCJ-CID's calculation of his sentence, alleging he was denied due process by

the arbitrary revocation of his parole and because his parole was revoked instead of him being sent to

an ISF, that his rights had been violated under the equal protection clause of the Constitution, that he

was being punished twice in violation of the double jeopardy clause by the failure to credit his

sentence with street time, and that his sentence had been unconstitutionally extended in violation of

the double jeopardy clause.  On August 11, 2010, the State filed an answer arguing petitioner's

application should be denied on the merits.  On August 12, 2010, the state trial court entered findings

of fact and conclusions of law recommending state habeas corpus relief be denied.  On September 7,

2010, petitioner objected to the State's answer.  On November 10, 2010, the Texas Court of Criminal

Appeals dismissed petitioner's second state habeas application without written order, again citing

Texas Government Code § 501.0081(b)-(c).  *In re Morrison*, No. 73,988-02.

On November 23, 2010, TDCJ denied petitioner's time dispute resolution finding no error in

petitioner's sentence calculation.

On December 6, 2010, petitioner filed a third state habeas application challenging the parole

revocation and the calculation of his sentence, alleging he was reclassified and thus denied street time

credits in violation of the prohibition against ex post facto laws, that he was denied due process by the

arbitrary revocation of his parole and because his parole was revoked instead of petitioner being sent

to an ISF, that his rights had been violated under the equal protection clause of the Constitution, that

he was being punished twice in violation of the double jeopardy clause by the failure to credit his

sentence with street time, and that his sentence had been unconstitutionally extended in violation of

the double jeopardy clause and the prohibition against bills of attainder.  On December 15, 2010, the

State filed an answer asserting petitioner's application should be dismissed for failing to obtain a

written decision from TDCJ as to petitioner's time credit complaint, or that petitioner's state habeas application should be denied on the merits. On December 16, 2010, the state trial court designated issues for determination and ordered the filing of an affidavit addressing those issues.[5]  On January 14, 2011, the State filed an affidavit from TDCJ reflecting (1) TDCJ responded to petitioner's time dispute resolution on November 23, 2010 finding there was no error in his time calculations; (2) petitioner was not within 180 days of his mandatory supervised release date of May 10, 2020 or discharge date of April 21, 2033; (3) petitioner forfeited his street time pursuant to Texas Government Code § 508.283(b) upon his return to TDCJ custody due to his conviction of murder; and (5) the 2009 version of Texas Government Code was in effect at the time of petitioner's parole revocation rendering petitioner ineligible for release to mandatory supervision because he had been previously convicted of the offense of murder. On February 9, 2011, petitioner filed objections to the State's answer and TDCJ's affidavit. On July 26, 2011, the state trial court entered findings of fact and conclusions of law recommending petitioner be denied state habeas corpus relief. On August 22, 2011, petitioner filed objections to the state trial court's findings. On September 14, 2011, the Texas Court of Criminal Appeals denied petitioner's habeas application without written order based on the findings of the trial court without a hearing. *Ex parte Morrison*, No. 73,988-03.

On October 19, 2011, petitioner filed the instant federal petition for a writ of habeas corpus. On January 18, 2012, respondent filed an answer to petitioner's habeas application opposing relief. On May 2, 2012, petitioner filed a reply to respondent's answer asserting additional claims not raised in either the state habeas proceedings or in the October 2011 federal habeas application.

---

[5]On January 4, 2011, petitioner again became eligible for early conditional release to parole. On January 18, 2011, petitioner was reviewed for parole, but was denied release due to the nature of the 1979 offense of which he was convicted, and because of his prior unsuccessful period of parole. Petitioner's next review is not scheduled until January 2016.

II.

## PETITIONER'S CLAIMS

Petitioner claims his confinement is in violation of the United States Constitution as a result of

the following:

1. The Parole Board violated petitioner's right to due process when it revoked petitioner's parole and returned him to prison rather than sending him to an Intermediate Sanction Facility (ISF);

2. TDCJ-CID is violating petitioner's right to due process by failing to give him credit for his "street time," thereby unconstitutionally extending his sentence;

3. Sections 508.283(b) and 508.149 of the Texas Government Code are unconstitutional because they act as bills of attainder;

4. TDCJ-CID is violating the prohibition against double jeopardy because petitioner is being punished twice for his parole violation, to wit:  by the revocation of his early release to parole, and by the forfeiture of his "street time"; and

5. TDCJ-CID is violating petitioner's right to equal protection by denying him "flat time" credits for the "street time" he accrued while on early release to parole.

III.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a

state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the

merits in state court proceedings unless that person first shows the prior adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "Clearly established Federal law, as determined by the Supreme Court of the

United States" includes only Supreme Court decisions as of the time of the relevant state-court

adjudication on the merits. *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003). "The state court's application of the law must be 'unreasonable' in addition to being merely 'incorrect.'" *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th Cir. 2000).

A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Review is limited to the record that was before the state court that adjudicated the claim on the merits and additional evidence introduced in federal court has no bearing on review. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (the Fifth Circuit recognizes this Texas state writ jurisprudence).

Whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784 (2011). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden in a federal case still must be met by showing there was no reasonable basis for the state court to deny relief. *Id*.

Petitioner filed a state habeas application challenging the constitutionality of his parole revocation and TDCJ's failure to give him credit for time served on parole. The grounds alleged in his state habeas petition were the same grounds alleged federally. The Court of Criminal Appeals denied petitioner's state habeas application without written order on findings of the trial court without a hearing. The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claims on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999). Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision denying relief was based on an unreasonable determination of the facts in light of the evidence before the state court, or was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

IV.
UNDERLINE FAILURE TO MEET BURDEN

Petitioner has restated the claims he raised in his state habeas application and argues the adjudication of such claims was erroneous. Petitioner has not, however, shown the state court ruling involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Petitioner cites federal case law that is inapposite and/or irrelevant to his specific claims, fails to cite clearly established federal law as determined by the United States Supreme Court that pertains to and/or controls his claims, and fails to sufficiently show in what way

the state court unreasonably applied federal case law.  Petitioner has not made the argument, nor has

he shown, the state habeas decision was based on an *unreasonable determination of the facts* in light

of the evidence.[6]   Whether this Court agrees with the Texas parole board's decision to revoke

petitioner's parole and return petitioner to prison is not relevant much less controlling in this

proceeding.  This Court <u>cannot</u> grant petitioner federal habeas corpus relief absent a showing that the

state courts reached a conclusion opposite to the Supreme Court on a question of law, or that the state

courts' conclusions of law were contrary to, or involved an unreasonable application of, Supreme

Court law with respect to his claims.  Since petitioner has not met his burden, this Court is precluded

from granting petitioner federal habeas corpus relief and the federal habeas corpus petition should be

DENIED.  Even though petitioner has failed to meet his burden under the AEDPA as set out above,

petitioner's claims are without merit.

V.
REVOCATION OF PAROLE AND ISF

By his first ground, petitioner complains of the Board's decision to revoke his parole and

return him to prison for the remainder of his sentence, arguing such action was an abuse of discretion

because of the severity of the sanction in relation to the parole violations.  Petitioner appears to argue

the revocation of his parole for the commission of a misdemeanor offense and the decision to return

him to prison, after serving more than 23 years on parole and only having 8 months left before he

would have discharged his sentence, is such a disproportionate sanction in relation to the conduct he

engaged in that the decision was an abuse of discretion which resulted in a denial of constitutional

---

[6]In his reply filed in response to respondent's answer, petitioner does attempt to allege the state court rulings were based on an *unreasonable determination of the facts*.  However, petitioner does not identify specific *factual* determinations made by the state courts which were unreasonable, rather, he appears to assert the state court decisions were based on erroneous information supplied to the state courts.  Petitioner's reply brief arguments are not actual claims that state court factual determinations were unreasonable, rather, that the law was incorrectly applied to the facts or that the incorrect state laws were being applied to him.

rights.

Petitioner was found to have violated a condition of his parole in two (2) instances, *i.e.*, by committing two criminal offenses in violation of state law. "After a parole panel or designated agent of the board has held a hearing . . ., in any manner warranted by the evidence, a parole panel may continue, revoke, or modify the parole or mandatory supervision." Tex. Gov't Code § 508.283(a)(2) (2009). Petitioner concedes that the decision to continue, revoke or modify parole is discretionary, but appears to argue, without citation to relevant authority, that this discretion should be constitutionally tempered by a determination of whether the parole violation justifies his return to confinement to complete the remainder of his originally assessed sentence. Petitioner has not cited and this Court has not found any such limitation in the United States Constitution. While petitioner was entitled to procedural due process before his parole could be revoked, and was ensured that any determination to revoke parole was based upon reliable evidence, *see Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 496 (1972), there is no federal constitutional guarantee that a violation of the conditions of parole must be of a certain severity to justify the length of time remaining to be served if revoked. A state prisoner does not have any free standing federal constitutional right to obtain release from confinement prior to the expiration of his sentence. *See Board of Pardons v. Allen,* 482 U.S. 369, 378 n. 10, 107 S.Ct. 2415, 2421 n. 10, 96 L.Ed.2d 303 (1987); *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 736 (1996). But once release on parole is granted, that release can be revoked as long as the procedure leading to the decision to revoke such release comports with constitutional procedural due process and the decision is substantiated by reliable evidence. If those criteria are met, the decision itself, as well as the individual circumstances of the parolee, is not subject to further constitutional scrutiny.

To the extent petitioner contends the amount of time on parole should be a consideration, he

has not shown the Parole Board did not consider the severity of its decision.  Instead, petitioner appears to argue the Parole Board's decision was *per se* unconstitutional under the facts.  Petitioner's claim must be DENIED.

Petitioner also argues he was denied due process because the Board did not place him in an ISF instead of returning him to prison after the revocation of his parole.  ISFs provide "an intermediate sanction to revocation that removes the offender from the community."[7]  Persons are eligible for placement in an ISF as a result of a Board action for ISF placement pursuant to a revocation hearing if there are no pending criminal charges or significant medical or mental health issues.[8]  ISFs are also used as a "special condition" of parole for offenders under or as a continuation of active supervision for persons with no pending charges who have violated the conditions of release to parole.  In such instances, such a special condition is imposed to avoid revoking parole and returning the offender to prison.  The addition of ISF as a special condition is "intended to afford a sanction for an offender who fails to comply with the terms and conditions of release to parole or mandatory supervision."[9]

Petitioner argues that due to the purpose of ISF, he had a legitimate expectation of placement in an ISF after the revocation of his parole instead of being returned to prison.  Petitioner maintains this expectation created a protected liberty interest in ISF placement entitling him to constitutional due process, and that he was denied due process when he was not placed in ISF but, instead was returned to prison.

---

[7]*Texas Department of Criminal Justice, Community Justice Assistance Division*, Policy and Procedures for Community Supervision Placements (June 5, 2009).

[8]*Texas Department of Criminal Justice, Parole Division*, Policy and Operating Procedure PD/POP-4.3.1 (January 30, 2014).

[9] *Texas Board of Pardons and Paroles*, BPP-POL. 04-06.02 (June 16, 2004).

Even assuming petitioner was eligible for placement in an ISF,[10] he had no constitutional right to placement in an ISF as a temporary confinement sanction after a finding that he had violated the conditions of his parole.  *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no due process rights arise in respect to a state's choice of incarceration facility, even though "the degree of confinement in one prison may be quite different from that in another.").  There is no liberty interest in placement in a less restrictive facility.  *Cf. Smith v. Cockrell*, 57 Fed.Appx. 210 (5th Cir. Jan. 3, 2003) (no due process constitutional concerns were raised when the state failed to give petitioner notice of evidence it sought to use to deny him post-revocation incarceration at an ISF).  Petitioner's disagreement with the Board's decision to revoke his parole, and/or to send him back to prison rather than to an ISF facility, does not amount to a denial of due process.  Petitioner has not presented a cognizable claim for federal habeas corpus relief.  Petitioner's claim should be DENIED.

## VI.
## "STREET TIME" CREDITS

A state prisoner does not have a federal constitutional right to obtain release from confinement prior to the expiration of his sentence.  Likewise, if a state prisoner is granted early release but violates the conditions of that release and is returned to prison, there is no constitutional right, as a matter of federal due process, to time credits toward the state prisoner's sentence for the out-of-prison time on release.  *See Hallmark v. Johnson,* 118 F.3d 1073, 1079-80 (5th Cir. 1997); *Newby v. Johnson,* 81 F.3d 567, 569 (5 Cir.1996); *Hamill v. Wright*, 870 F.2d 1032, 1036-37 (5th Cir. 1989); *Starnes v. Cornett,* 464 F.2d 524, 524 (5th Cir. 1972).  Consequently, there is no corresponding federal

---

[10]The record does not contain an Adjustment Statement and Waiver Processing Sheet from the revocation process reflecting whether petitioner met the criteria for placement in an ISF after revocation of his parole.

constitutional right to "street time" credit.[11]  *See Thompson v. Cockrell,* 263 F.3d 423, 426 (5th Cir. 2001); *Morrison v. Johnson,* 106 F.3d 127, 129 (5th Cir. 1997) (requiring a prisoner to serve the remaining portion of his sentence after revocation does not violate the Constitution).  Claims of failure to properly credit parole time, street time, or mandatory release time do not raise issues of federal constitutional significance because there is no federal constitutional right to street time.  *See, e.g., Starnes v. Connett*, 464 F.2d 524 (5th Cir. 1972) (declining to depart from a "unanimous line of precedent ."); *Woods v. United States*, 449 F.2d 740, 741 (5th Cir. 1971) ("not entitled to credit ... for time spent on mandatory release.").

Petitioner claims he is entitled to federal habeas relief because TDCJ-CID is violating his constitutional right to due process by failing to give him credit toward his sentence for his "street time."  Because this claim does not raise a constitutional issue, petitioner is not entitled to federal habeas relief.

In his reply to respondent's answer, petitioner appears to argue respondent has misapplied Texas law governing street time.  Any argument that state courts are incorrectly applying their own law is not a basis for federal habeas corpus relief.  *See  Beazley v. Johnson*, 242 F.3d 248, 261 (5th Cir. 2001) ( [T]he proper interpretation of state law is not cognizable in federal habeas proceedings.).  Even if an error in applying state law was cognizable, petitioner's claim would still fail because he is not entitled to street time under Texas law.

At the time petitioner committed the murder offense in 1979, at the time of his conviction in 1980, and at the time of his early release to parole in 1986, Texas law provided that a person was <u>not</u>

---

[11]"Street-time credit refers to calendar time a person receives towards his sentence for days spent on parole or mandatory supervision."  *Ex parte Spann*, 132 S.W.3d 390, 392 n. 2 (Tex.Crim.App. 2004).

entitled to credit for street time following revocation of parole.[12]  Because state law did not provide for credit for street time when parole was revoked, petitioner had no liberty interest in street time credits.

In 2001, after petitioner had been on parole for approximately 15 years with no right to street time credit, the Texas Legislature amended section 508.283(c) of the Texas Government Code to allow certain parole violators to receive credit for street time.  The new law only allowed a certain amount of street time credits[13] for offenders who (1) had their parole revoked on or after September 1, 2001, and (2) who were not persons "described by" section 508.149(a) of the Texas Government Code.  *See Ex parte Spann*, 132 S.W.3d 390, 392 (Tex.Crim.App. 2004).  Based upon this 2001 amendment, the Fifth Circuit found that some Texas prisoners, those who meet the statutory qualifications, may have a liberty interest in retaining street time credit.  *Johnson v. Quarterman*, 304 Fed. App'x 234, 236 (5th Cir. 2008).

While petitioner met the first prong of the statutory requirements to receive street time credit, *i.e.*, his parole was revoked on or after September 1, 2001, petitioner did not meet the second prong of

---

[12]Texas law in effect when petitioner was released to parole in 1986 provided:

> When a person's parole, mandatory supervision, or conditional pardon is revoked, that person may be required to serve the portion remaining of the sentence on which he was released, such portion remaining to be calculated without credit for the time from the date of his release to the date of revocation.

Tex. Crim. Proc. art. 42.18, § 14(a) (1986).

[13]Section 508.283(c), effective September 1, 2001, currently provides (and provided in 2009 when petitioner's parole was revoked):

> (c) If the parole, mandatory supervision or conditional pardon of a person other than a person described by Section 508.149(a) is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released.  For a person who on the date of issuance of a warrant or summons initiating the revocation process is subject to a sentence the remaining portion of which is greater than the amount of time from the date of the person's release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for the time from the date of the person's release to the date of revocation.  For a person who on the date of issuance of the warrant of summons is subject to a sentence the remaining portion of which is less than the amount of time from the date of the persons release to the date of issuance of the warrant or summons, the remaining portion is to be served without credit for an amount of time equal to the remaining portion of the sentence on the date of issuance of the warrant or citation.

> Tex. Gov't Code Ann § 508.283(c) (emphasis added).

the statute.  Namely, when petitioner's parole was revoked on October 1, 2009, petitioner, due to his

conviction for murder, was serving a sentence for an offense listed in section 508.149(a)(2).[14]

Although petitioner was eligible for mandatory supervision due to his murder offense occurring before

1987, he was still, in fact, a person "described by" section 508.149(a).  The legislature's wording of

the statute reflects an intent to award street time conditionally based on the nature of the offense rather

than on the mandatory supervision-eligibility of the inmate.  Therefore, petitioner was <u>not</u> entitled to

street time credit under Section 508.283(c) because he was a person "described by" Section

508.149(a) when his release was revoked.  As a result, petitioner was not entitled to street-time credit

for the period of time he spent on parole from September 1, 2001, the effective date of the statute, to

August 27, 2009, the date prior to his arrest on the pre-revocation warrant (petitioner has been given

credit from August 28, 2009, the date of his arrest, to October 1, 2009, the date of his revocation).  Of

course petitioner is not entitled to street-time credit from the date of his initial conditional release,

February 18, 1986, through August 31, 2001, the date prior to the effective date of the statute, because

the statute allowing for street time credit was not applied retroactively.  *See Ex parte Spann,* 132

S.W.3d 390, 394 n.7 (Tex.Crim.App. 2004); *Ex parte Keller*, 173 S.W.3d 492, 495 n. 8

(Tex.Crim.App. 2005).

The forfeiture of petitioner's street time credit following his parole revocation and return to

prison did not increase his punishment for the offense beyond what was prescribed when he

committed the crime.  *See  Morrison v. Johnson*, 106 F.3d 127, 129 n. 1 (5th Cir.1997).  Petitioner is

being required to serve the same sentence in custody imposed by the trial court and permitted by

Texas law at the time of the offense and no more.

---

[14]*Ex parte Noyola*, 215 S.W.3d 862, 867 (Tex.Crim.App. 2007); *see also Ex parte Foster*, 2007 WL 1347832
(Tex.Crim.App. May 9, 2007) (the version of the statute in effect when parole is revoked is the starting point).

The Texas Court of Criminal Appeals, on state habeas review, determined petitioner is not entitled to flat time credit for the time he was released on parole.  As discussed above, petitioner has failed to show the state court's decision was unreasonable.  Petitioner is not entitled to federal habeas relief, and this claim should be DENIED.

VII.
BILLS OF ATTAINDER

Section 508.283(a)(2) of the Texas Government Code provides that after a hearing, a parole panel may continue, revoke, or modify a person's parole.  Section 508.283(b) provides that if the parole of a person "described by" section 508.149(a) (inmates currently ineligible for mandatory supervision) is revoked, "the person may be required to serve the remaining portion of the sentence on which the person was released."  Section 508.283(b) further provides that "[t]he remaining portion is computed without credit for the time from the date of the person's release to the date of revocation."

Petitioner contends sections 508.283(b) and 508.149 of the Texas Government code are unconstitutional because they act as bills of attainder.  A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  *Nixon v. Administrator of General Services*, 433 U.S. 423, 468 (1977). Texas laws determining eligibility for early release from confinement to mandatory supervision and governing whether a person is required to serve the remainder of their sentence after an unsuccessful attempt at parole or whether such a person is eligible to receive street-time credits after such an unsuccessful attempt, are laws of neutral application.  As such, they are not unconstitutional bills of attainder passed by a legislature to specifically deprive an individual, in this case the petitioner, of his liberty or inflict punishment without a judicial trial.  Petitioner fails to show he was the victim of a bill of attainder.  *Cf. Harris v. Quarterman*, 2007 WL 2965040 (S.D. Tex. 2007).  Petitioner's claim should be DENIED.

VIII.

DOUBLE JEOPARDY VIOLATION

Petitioner contends TDCJ is violating the prohibition against double jeopardy because petitioner is being punished twice for his parole violations, to wit:  (1) by the revocation of his parole, and (2) the forfeiture of his "street time."

The Double Jeopardy Clause of the Fifth Amendment affords protection against the imposition of multiple criminal punishments for the same offense.  *Hudson v. United States*, 522 U.S. 93, 99 (1997).  As noted above, Texas law provides a sentence is not to be credited "flat time" for the time a person is on parole if that person violates his parole and parole is revoked.  The forfeiture of "street time" is not a punishment for an identifiable crime, rather, it is simply the result of an unsuccessful attempt at parole.  Here, the forfeiture of petitioner's "street time" after the revocation of his parole did not result in petitioner serving a period of incarceration longer than the sentence he was originally assessed for his murder conviction, nor did such forfeiture cause petitioner to receive a criminal punishment more severe or greater than that assigned by law when the criminal act was committed.

The Fifth Circuit Court of Appeals has not extended the constitutional prohibition against multiple punishments to parole revocation proceedings, finding instead that double jeopardy is not violated by the state requiring a parolee to serve his entire sentence after parole is revoked.  *Morrison v. Johnson*, 106 F.3d 127, 129 n.1 (5th Cir. 1997).  Petitioner's claim under this ground should be DENIED.

To the extent petitioner is complaining not only of the impact of the execution of the statute, but also of the validity of the statute itself, petitioner's claim fails.  Under an equal protection analysis, a law that does not "target[ ] a suspect class" will be upheld, "so long as it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).  When a regulation "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96

L.Ed.2d 64 (1987).  Petitioner fails to show that parole violators "described by" the statutory

provision identifying inmates currently ineligible for mandatory supervision are a suspect class for

equal protection purposes, nor has he shown the classification created by the statute is not rationally

related to a legitimate state interest.  Petitioner's claim should be DENIED.

IX.
EQUAL RIGHTS VIOLATION

Petitioner contends Texas Government Code § 508.283(b), which denies "street time" to

parole violators who are "described by" section 508.149(a) (inmates ineligible for mandatory

supervision), violates the Equal Protection Clause of the Fourteenth Amendment of the United States

Constitution.  Petitioner appears to argue the statute's different treatment of parole violators based

upon the offense for which they were sentenced is arbitrary and unreasonable, and that there is no

compelling interest in the disproportionate treatment of this class of prisoners.  As applied here,

petitioner appears to claim the statutorily-required forfeiture of his "street time" credit was a

disproportionate sanction because other parole offenders, *i.e.*, those who are not "described by" the

statute, do not forfeit their credits.

Fourteenth Amendment jurisprudence recognizes that most legislation necessarily creates

classes.  *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996).  The Equal

Protection Clause therefore demands only that "all persons similarly situated be treated alike."

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 n. 15 (5th Cir. 2001).  TDCJ-CID denied petitioner

credit for the time he served while on parole pursuant to section 508.283 of the Texas Government

Code.  The statutory scheme of that section distinguishes between parole offenders who have been

convicted of what the legislature has classified as particularly heinous offenses enumerated in section

508.149(a) of the Texas Government Code and those who were convicted of other offenses.  All

prisoners convicted under an offense listed in section 508.149(a) are subject to automatic forfeiture of "street time" credit upon revocation of their parole.  Mandating the forfeiture of "street time" upon parole revocation for certain classes of prisoners based upon their underlying conviction is not a denial of equal protection.  Petitioner was convicted of murder, an offense falling within the purview of section 508.149(a).  Therefore, to succeed in demonstrating that a violation of the Equal Protection Clause has occurred, he must show that other parole offenders also convicted of murder received lesser sanctions.  Petitioner has failed to produce any evidence in support of this allegation.  The undersigned concludes the sanction imposed upon petitioner was not in violation of the Equal Protection Clause.  *Cf. Miller v. Thaler*, 2010 WL 3199357 (S.D. Tex. Aug. 11, 2010).

## X.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner WILLIAM BURTON MORRISON be DENIED.

## XI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____26th_____ day of February 2015.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).